**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 CR 67 |
| | ) | |
| v. | ) | Judge Beth Phillips |
| | ) | |
| MIRZA MICHAEL REAZUDDIN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MIRZA REAZUDDIN'S APPEAL OF MAGISTRATE JUDGE'S**
**DETENTION ORDER AND REQUEST FOR IMMEDIATE RELEASE WITH**
**CONDITIONS**

Defendant Mirza Reazuddin ("Mr. Reazuddin"), by and through his undersigned counsel, respectfully moves this Honorable Court to vacate Magistrate Judge Morris's detention order pursuant to 18 U.S.C. § 3145(b) and order Mr. Reazuddin released from custody pursuant to the Bail Reform Act (BRA) and the Fifth Amendment's Due Process Clause. Data from the Administrative Office of the U.S. Courts show that there is an exaggerated concern over risk of flight in our system, and that the vast majority of released defendants do not flee. In this case, the government has not met its burden of proving by a preponderance of the evidence that no set of release conditions can reasonably assure Mr. Reazuddin's appearance in court. Even if the Court had concerns about potential flight, a location-monitoring condition would effectively address those concerns. Accordingly, Mr. Reazuddin must be released on bond immediately with appropriate conditions of release. *See* 18 U.S.C. §§ 3142(a)–(c). This appeal arises under 18 U.S.C. § 3145(b), which provides for *de novo* review of a magistrate judge's detention order. In support of this appeal, Mr. Reazuddin states as follows:

# I. FACTUAL/PROCEDURAL BACKGROUND

Mr. Reazuddin was arrested in the Northern District of Georgia on April 25, 2023 pursuant to a warrant issued with the indictment in this case charging him with under 18 U.S.C. § 1343 and 18 USC § 1957 of wire fraud and engaging in monetary transfer of criminally derived property, respectively. ECF No. 1. Mr. Reazuddin is the only defendant charged in the indictment.

In the Northern District of Georgia, the government sought detention on the basis that Mr. Reazuddin is supposedly a serious risk of obstruction and that he was a danger to the community. It did not argue that any presumption in favor of detention applied, or that Mr. Reazuddin posed a risk of flight. However, the government later argued in its response to Mr. Reazuddin's motion for a renewed bond hearing in this district that he is a risk of flight *as well as* a risk for obstruction. After a detention hearing in the Northern District of Georgia, the Court ordered Mr. Reazuddin detained based on a series of proffers and arguments made by the government that were not disclosed to Mr. Reazuddin before the hearing, and which Mr. Reazuddin had no opportunity to discuss with his counsel and meaningfully refute during the hearing.

The U.S. Marshals transported Mr. Reazuddin to this District where Mr. Reazuddin promptly moved for pretrial release. ECF No. 14. Both sides were provided a copy of the transcript from the hearing in the Northern District of Georgia. The government filed a response brief which was followed by a reply by Mr. Reazuddin. ECF Nos. 15 & 18.

Interestingly enough, the government never refuted Mr. Reazuddin's argument that he should have a renewed detention hearing based on new information that was not available during the initial bond hearing. Rather, the government _agreed_ that given the new information referenced in Mr. Reazuddin's request that the hearing "should be reopened." Despite the government's

concession on the issue, the Court denied Mr. Reazuddin's request for a renewed detention hearing. ECF No. 35.

Specifically, Magistrate Judge Morris concluded that the government had established by a preponderance of evidence that "no release conditions exist that would reasonably assure" Mr. Reazuddin's appearance. *Id.* at 2. Magistrate Judge Morris specifically emphasized that Mr. Reazuddin was given an opportunity to address the government's claims, that the information from the initial hearing remains unchanged, and that the addition of the third party custodian or Mr. Reazuddin's worsening medical condition does not alleviate the Court's concerns.

## II. <u>ARGUMENT</u>

### A. Detaining a Defendant as a "Serious Risk of Flight" Is Appropriate Only in "Extreme and Unusual Circumstances."

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[1] For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator, had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See Abrahams*, 575 F.2d at 4. The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here. In addition, a defendant

---

[1] *See* Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

should not be detained as a "serious risk" of flight when the risk of nonappearance can be mitigated by conditions of release.  The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.

**B. Mr. Reazuddin Is Not a Serious Flight Risk and Conditions of Release Will Reasonably Assure His Appearance.**

Mr. Reazuddin is a citizen of the United States and has lived in Missouri since 2012. He is 66 years old. He is in the midst of a divorce from his current spouse but he has an ex-wife who he still communicates with in Illinois as well as 3 adult children. One of his daughters is a practicing physician and another daughter is in her final year of medical school. His son is autistic and lives in Illinois with his mother due to requiring 24/7 monitoring, and Mr. Reazuddin makes regular trips to Chicago and stays for 3-4 days at a time. He does not have a passport and his travel was primarily to Chicago and Atlanta, where he has another residence.

Mr. Reazuddin is in the midst of a divorce with his wife and as a result does not have other immediate family in the Missouri area. As such, he has secured a third party custodian, Rafee Kidwai, that is willing to appear before the Court and be admonished as to the requirements of being a third party custodian. This is a changed circumstance since the original detention hearing in the Northern District of Georgia. Mr. Kidwai has known Mr. Reazuddin for 10 years through family and friends. He is also one of the caretakers for Mr. Reazuddin's autistic son. He lives in Naperville, Illinois and is willing to provide Mr. Reazuddin a home at his residence to be able to adequately monitor him and his activities. Furthermore, Mr. Reazuddin's ex wife lives in the Chicagoland area and has been supportive of him while he is in custody.

Upon information and belief, Mr. Reazuddin has only two prior convictions, both of which were 25 years ago. The government and Pretrial Services have proffered no evidence or argument

that Mr. Reazuddin has ever failed to appear in connection with that case or any other court proceeding. This supports the conclusion that he is not a serious flight risk. *See, e.g., United States v. Williams*, 1988 WL 23780, at *1 (N.D. Ill. Mar. 8, 1988) (defendant who made regular state court appearances in the past deemed not a serious flight risk). The government references outstanding warrants but presents no evidence that Mr. Reazuddin was aware of those warrants or deliberately failed to take care of them.

Given the family ties he has in the State of Illinois as well as the fact that he has been living in Missouri for over 10 years, the following conditions of release under § 3142(c)(1)(B) recommended by Pretrial Services, and any other conditions the Court deems necessary, will reasonably assure Mr. Reazuddin's appearance in court:

- placing Mr. Reazuddin in custody of a third-party custodian – his friend Rafee Kidwai who will be vetted by Pretrial Services and approved as a custodian -- "who agrees to assume supervision and to report any violation of a release condition to the court" (§ 3142(c)(1)(B)(i));

- maintaining or actively seeking employment (§ 3142(c)(1)(B)(ii));

- following restrictions on "personal associations, place of abode, or travel," which here would limit travel to the Western District of Missouri and the Northern District of Illinois (§ 3142(c)(1)(B)(iv));[2]

- surrendering all passports to Pretrial Services and not obtaining any new ones or other international travel documents ((§ 3142(c)(1)(B)(xiv));

- reporting on a "regular basis" to Pretrial Services ((§ 3142(c)(1)(B)(vi)); and

---

[2] While Mr. Reazuddin does not agree it is necessary nor has Pretrial Services recommended it, Mr. Reazuddin's location could also be subject to electronic or GPS monitoring if the Court deemed it necessary.

- remaining standard conditions of release recommended by Pretrial Services (*e.g.*, no firearms or unlawful drugs, reporting law enforcement contacts, drug testing and treatment if deemed appropriate, etc.) ((§ 3142(c)(1)(B)(xiv)).

**C. The Government's Proffered Facts and Argument Do Not Satisfy the Government's Burden.**

The government's proffered facts and arguments are not persuasive and fail to meet the government's burden of establishing by a preponderance of the evidence that no conditions of release can reasonably assure Mr. Reazuddin's appearance. The government's arguments fall into three basic categories: (i) Mr. Reazuddin is a risk of flight, (ii) Mr. Reazuddin is a danger to the community, and (3) a hodge podge of other facts regarding a domestic battery warrant in state court. None of these arguments individually or combined justify Mr. Reazuddin's pretrial detention.

1. <u>Mr. Reazuddin's is Not a Risk of Flight, Obstruction, or a Danger</u>

The government suggests Mr. Reazuddin is a serious flight risk because he was supposedly hiding in the trunk of his car when federal agents raised his home, and because he supposedly tried to flee after getting engaged in a verbal altercation with his wife. Both situations are mischaracterized and not adequately addressed at the initial detention hearing.

One reference to support the inference of attempting to flee was to an alleged disguise that Mr. Reazuddin was wearing when he was arrested, when in actuality it was a hairpiece he has worn for over 20 years, as well as the attire he had on which was improperly described. Upon learning Mr. Reazuddin's hair was a hairpiece, the agent's knee jerk reaction was to assume it was a disguise meant to throw off law enforcement. Mr. Reazuddin lost his hair over 20 years ago due to a medical condition. He weighed nearly 300 pounds and went on an unhealthy weight loss journey which caused complications resulting in hair loss. Since then he has worn a hairpiece, and

many people, including family members, have not seen him without it. Any allegation that this was an intentional act on Mr. Reazuddin to evade law enforcement is pure fiction. During the initial hearing, the government argued that he had his hairpiece on so "he was aware they were there." The insinuation is that the hairpiece was meant to throw them off and was worn purely to attempt to flee which is completely unsubstantiated. The government was aware or should have been aware that that hairpiece was not worn just because agents were present because they were in possession of Mr. Reazuddin's California driver's license provided in initial discovery which showed Mr. Reazuddin with his hairpiece on a license issued on May 17, 2022.

Moreover, when Mr. Reazuddin was arrested, he was in his own home. He had no idea federal agents were in pursuit and certainly did not concoct a plan to fool them. Him wearing a hairpiece while in his home is indicative of him being someone that always wore a hairpiece, including in the privacy of his own home. A similar conclusion was reached when he was supposedly found "hiding" in the trunk of his car. Again, when the agents went to arrest him, they arrived completely by surprise. He had been in the back of his car to push the back seat in to have more room to place a television in the trunk. There is no evidence to support the Government's conclusion, especially since part of their reliance on the escape theory is that he was disguising himself with a wig, which turned out to be a hairpiece that he has worn for 20 years. Nothing in the facts can point to how long he had been in the trunk, and whether or not he went into the trunk knowing agents were in pursuit.

The government also references Mr. Reazuddin allegedly fleeing after a heated encounter with his wife and that he left for the purpose of avoiding arrest. The Government told the Court that in response to the incident on December 19, police were called and he "fled" out the back. Based on that proffer, the Court specifically asked defense counsel to address "the two instances

of flight." After being questioned by the Court, the Government made several concessions. The first was that they were not sure whether or not he was running or walking, and also clarified their claim that Mr. Reazuddin left when police arrived, noting that he left when while the reporting party was still on the phone with 911. Mr. Reazuddin correctly assessed the situation he was involved in and left before a seemingly heated situation got even worse. There was no evidence offered as to when during the 911 call Mr. Reazuddin left, whether or not he knew 911 was being called or that police were even on the way.

Finally, as addressed in his initial motion for release and reply brief, Mr. Reazuddin is not a danger to the community based on an unadjudicated charge, particularly one where he was given a personal recognizance bond by the very court where the charge is pending. In determining the bond, that court would factor in someone's criminal history, risk of flight, as well as assess whether they are a danger and impose conditions to assure safety as well as future appearances in court. There were no conditions such as electronic home monitoring, a high bond, or any other condition placed on Mr. Reazuddin.

The government has failed at the threshold to proffer facts (i) that Mr. Reazuddin actually *would* flee prosecution despite his close ties to Missouri and Illinois – which would involve forfeiting any bond, subjecting his Rafee Kidwai to negative consequences as his custodian, and forever abandoning his nuclear family he has been demonstrably close – and (ii) that he has the wherewithal to leave the United States without a passport.

Furthermore, the Government also relies on the strength of their case as an argument as to why Mr. Reazuddin should be detained. ECF No. 15 at 5. But the weight of the evidence against the defendant, particularly in a case like this, is the least important factor bearing on detention. *See, e.g.*, *United States v. Radick*, No. 05 CR 798-2, 2006 WL 436116, at *3 (N.D. Ill. Feb. 17,

2006) ("The charge, at this stage, is an accusation.  The weight of the evidence against him is the "least important of the various factors." (internal citation omitted)); *United States v. Caro*, 2005 WL 8160735, at *3 (N.D. Ill. Nov. 2, 2005) (same).  Even if strong evidence of certain criminal behavior could theoretically bear on the issue of flight *(e.g.*, if the charged conduct involved international travel under an assumed identity – this is not one of those cases.  Mr. Reazuddin is alleged to have improperly received PPP loans. Supposedly strong evidence of that conduct has no bearing at all on whether Mr. Reazuddin would appear in Court if released on appropriate conditions.

### D. Statistics Demonstrating It Is Extremely Rare for Defendants on Bond to Flee Confirm that the Government Has Not Met Its Burden Here.

Official Court statistics show that when release increases, flight does not.  This Court should be guided by Administrative Office (AO) statistics showing that nearly everyone released pending federal trial appears in court.  In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required.[3]  Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[4]

The bond statistics for this District likewise strongly suggest that Mr. Reazuddin should be released.  In this District, released federal defendants appeared for court 99.45% of the time in 2019 (*i.e.*, 1260 cases in release status with only 7 failures to appear).  *See* Table H-15.  Yet,

---

[3] AO Table H-15 ("Table H-15") (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2%).
[4] The data showing near-perfect compliance on bond is illustrated in the chart, "Federal Clients on Bond Rarely Flee or Recidivate."  The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear rate for these districts was calculated using App 1, AO Table H-15.  With regard to flight, the ten federal districts with the lowest release rates (average 26.00%) have an average failure-to-appear rate of 1.37%, while the ten districts with the highest release rates (average 65.58%) have an *even lower* failure-to appear rate of 0.87%.

despite the statistically low risk of flight that defendants like Mr. Reazuddin pose, the government recommends detention in 77% of cases nationwide and in 67% of cases in this District. *See* AO Table H-3, https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2019.pdf. Clearly the government's detention requests are not tailored to the low risk of flight that defendants in this District and elsewhere pose.

Mr. Reazuddin must be released on conditions because the government has not established that he would be among the approximately 1% of defendants who fail to appear in court. In addition, the government's concerns could all be effectively addressed by the proposed conditions of release, including GPS monitoring if deemed necessary by the Court. Continuing to detain Mr. Reazuddin on this record would violate his constitutionally protected liberty interest.

## III.   CONCLUSION

For these reasons, Mr. Reazuddin respectfully asks this Court to vacate the detention order and order him released on conditions this Court deems appropriate under §§ 3142(a)–(c).

Respectfully submitted,

*/s/Sami Azhari*
Sami Azhari

*Attorney for Mirza Reazuddin*

Azhari LLC
134 N. Lasalle Street
Suite 444
Chicago, IL 60602
Ph: (312) 626-2871
Email: sazhari@azharillc.com

## CERTIFICATE OF SERVICE

The undersigned states that, on July 12, 2023, he caused the above to be served on counsel of record by way of ECF filing.

Respectfully submitted,

*/s/Sami Azhari*
Sami Azhari

*Attorney for Mirza Reazuddin*