IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**UNITED STATES OF AMERICA,**
**Plaintiff,**
v.                                                          Case No. 23-cr-00067-BP

**MIRZA MICHAEL REAZUDDIN,**
**Defendant.**

## MOTION IN SUPPORT OF A DOWNWARD VARIANCE / DEPARTURE

**COMES NOW** the Defendant, by and through counsel, David McDonald and moves this Court for a downward variance to five years of probation or alternatively a downward departure two levels, to 18 months of prison. This document is broken into several parts. First, a backstory will be provided to give the court insight into the Defendant in story form. Next, there will be procedural background section, followed by an arguments section which contains subsections for each ground of relief sought.

### THE BACK STORY

*A once successful business owner and family-man now finds himself struggling up a dark and dirty staircase in the Leavenworth Federal Prison, his face grimacing in pain. He walks with a limp because of the pain he feels from the flesh slowly rotting away on his right calf. He is careful to not overextend himself because he has a multitude of heart problems, any overextension on his part could be fatal.*

*This has been the daily life of the Defendant for the past 14 months. The Defendant is a religious man and prays daily. Along with his normal prayers, be now prays that he simply lives to make it out of incarceration alive. He also prays that the Court sees his remorse and grant him as much mercy as possible. The thoughts of being able to hold his family once again are what gets him through each day.*

1

*Just 6 years ago, the Defendant was living in a completely different life. He was actively operating not one, but two hotels. One in Kansas City, Missouri (The Grandview Hotel) and another in California (Best Host Inn). Operating hotels is what the Defendant has done for almost 50 years. He has won awards and made substantial contributions to the hotel industry through his work.*

*He always took great pride in making travelers feel at home while staying at his hotels. It was something he loved. But then, in late 2019, the COVID 19 pandemic happened and completely decimated the entire travel industry and turned the Defendant's life upside down. It wrecked the Defendant's business and his physical health. Just prior to the pandemic, the Defendant and his business partner in the Kansas City Hotel, had a falling out. This resulted civil suits and the eventual closure of the hotel. Following this closure, but with the hope of opening it back up, the Defendant applied for a PPP loan under the Kansas City Hotels name with estimated payroll. In this application, the Defendant falsely represented the active payroll (there was no payroll because the hotel was closed), presented a false document and falsely represented his actual ownership interest in the hotel as greater than it ever was.*

*Eventually, and despite the glaring falsehoods, the Defendant's PPP loan was approved and his business was given funds totaling $804,000. The Defendant never used the loan proceeds on anything hotel related. He instead used the funds to purchase a luxury, 2nd home in Lawrenceville, Georgia. The Defendant now recognizes how stupid this was, but at the time, thought he would be able to leverage the home to repay the loan as needed. This never happened. However, since his arrest, the Defendant has, in fact, already agreed to turn over his interest in the Georgia property to the government in hopes of satisfying his restitution obligation. In an attempt to further assist the government, the Defendant executed a quit claim*

*deed and filed a les pendens action transferring his interest in the Georgia property to the government.*

*The Defendant's misrepresentations on his loan application are isolated actions and not representative of the 67-year-old man that stands before the Court for sentencing. The Defendant hopes the Court judges him for not just for his crimes, but for also for his positive contributions to society. He has been a good and supportive father to his 3 children. His oldest lives in California where she is a practicing dermatologist, middle daughter has attended medical school and is working currently to start her own business, and the Defendant's third child has serious mental disabilities that requires special, round the clock, care.*

*The Defendant has operated many hotels, received his Juris Doctorates degree, and has raised a wonderful family. Some would say that, in the past, the Defendant was living the American dream, but is now living in a nightmare. The Defendant does not drink or use drugs. He does not gamble. He sticks out like a sore thumb in the Leavenworth Prison. He simply desires to return to society where he can provide a positive impact for others. He sees the wrong in what he did and promises to never repeat those actions.*

## **PROCEDURAL BACKGROUND**

1. On February 5th, 2024. The Defendant plead guilty, per plea agreement, Courts 4 (wire fraud) and 5 (money laundering).
2. Under the plea agreement the government agrees to dismiss the remaining count after sentencing and to recommend a sentence within the guideline range.
3. The plea agreement allows the Defendant to request a sentence outside of the guideline range.
4. Further, the Government will recommend a three-level reduction for acceptance of responsibility and a two-level reduction for zero-point offenders.

5. The PSR filed May 2, 2024, scores the Defendant with a Total Offense Level of 17, for a Zone D, guideline sentence of 24-30 months in prison.

6. The Defense is requesting two level Departure to 18 months of prison and/or a variance from the presumptive incarceration to a term of five years of probation.

7. The Defendant has been incarcerated since his arrest on this case on April 25th, 2023, approximately 14 months.

## ARGUMENTS AND AUTHORITY

### I. SENTENCING FACTORS

1. The overarching idea behind 18 U.S.C. § 3553(a) is that the sentencing Court impose a sentence sufficient, ***but not greater than necessary***, to comply with the seriousness of the offense, promote respect for the law and just punishment for the offense, deterrence, protect the public from future crimes, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(emphasis added).

2. 18 U.S.C. § 3553(a)(1) further directs the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.

3. Here, the Defendant has incredibly limited criminal history, a supportive family, an impressive work history, and an extensive volunteer resume working with many civic organizations.

4. The Defendant is a family man and has maintained substantial family ties over the years. Although he is in the midst of a divorce with his estranged spouse, he has an ex-wife who he still communicates with in Illinois, as well as three adult children. His eldest daughter is a practicing dermatologist in California and his son-in-law is a practicing pulmonologist. His youngest daughter is in the final year of medical school. His son suffers from Autism and lives in Illinois

with his mother due to requiring 24/7 monitoring. The Defendant was making regular trips to Chicago and spends three to four days at a time with his son.

5. The Defendant has accepted responsibility for his actions and has taken steps to repay his debts associated with this case.

6. Like so many others, the Defendant was hit hard by the COVID 19 pandemic. He suffered both financially and physically. Physically, he caught COVID twice, once resulting in a lengthy hospital say due to heart/breathing problems. He suffered financially because his career has always been in the hotel industry which was hit hard by the pandemic.

   7. Due to the financial pressures, the Defendant took a federal PP loan with the hope that he could get the same hotel he used to run, back up and running. His application was fraudulent as there was no existing business at the time of the loan, only future hopes that never manifested.

   8. The PPP loan money was never used to for its approved purposes, it was instead used instead to buy a large home in Georgia that the Defendant, his wife, and her family could all reside together.

   9. The Defendant has agreed to forfeit this Georgia property (valued at approximately $1,000,000), which should satisfy his restitution order in full.

   10. The Defendant has already served 14 months in custody prior to his sentencing, which, if actually serving his sentence in prison, would make him eligible for program reductions towards his sentence of up to 10 days per month via the first step act. This would total 140 days, or 4.67 months of additional reduction. Good time at a rate of 54 days per year would total over two months towards a total sentence as well. The means that the

Defendant, if he were to have done the programs he would so love to do, and received his good time, he'd have over 20 months of incarceration credit.

11. The defense prays the Court sees the time the Defendant has already served as an eye opener and deterrent towards future crimes.

V. A VARRIANCE TO PROBATION IS WARRANTED TO AVOID SENTENCING DISPARITY

12. According to the U.S. Sentencing Commission's Interactive Data Analyzer (IDA)[4], in the Eastern & Western District of Missouri, from 2019 – 2023.
there were 76 defendants sentenced for 2b1.1 crimes who were over the age of 60 and had level 1 criminal history. Of those 76 defendants, 42 received a sentence of probation only, 4 received a sentence of probation with alternative, 4 received a sentence of prison with alternative and 26 received a sentence of prison only.



The figure includes the 76 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure.
Alternatives include all cases in which individuals received conditions of confinement as described in USSG §5C1.1.
FILTER:
Fiscal Year: 2019,2020,2021,2022,2023; Circuit: All; State: All; District: Missouri, Eastern,Missouri, Western; Race: All; Gender: All; Age: Over 60; Citizenship: All; Education: All; Crime Type: All; Guideline: §2B1.1; Drug Type: All; Sentencing Zone: All; Criminal History: I; Career Offender Status: All

13. The Defendant, by the time of sentencing, will have served double the average incarceration sentence length of all 2b1.1 offenders similarly situated, of just **_7 months_**.

14. For those similarly situated 2b1.1 defendants who are sentenced to prison, the median length of their sentences is less than time than the Defendant has already served. The average sentence length is 18 months, which is only slightly more time than the Defendant has already served.



15. For those similarly situated 2b1.1 defendants sentenced in Missouri in 2023, 23 received downward variances while only 2 were sentenced within their guideline ranges. In 2022, no defendants were sentenced within their guideline range while 7 were granted downward variances. In 2021, 2 defendants were sentenced within their guidelines, whereas 6 were granted downward variances.

*FILTER: Fiscal Year: 2015,2016,2017,2018,2019,2020,2021,2022,2023; Crime Type: All; Guideline: §2B1.1 Circuit: All; State: Missouri; District: All; Race: All; Gender: All; Age: Over 60; Citizenship: All; Education: All; Crime Type: All; Guideline: §2B1.1; Drug Type: All; Criminal History: I; Career Offender Status: All

**ARGUMENT SUPPORTS A DOWNWARD DEPARTURE FOR DEPLORABLE PRISON CONDITIONS AT LEAVENWORTH PENITENTIARY**

Defendant is seeking downward departure under U.S.S.G Section 5k2.0 for deplorable conditions in pre-trial confinement based on, Bell v. Wolfish, 99 S.Ct. 1861, 60 L. Ed. 2d 447 (1979), which states that if the acts of the detention amount to punishment, a departure is possible.

2. Under U.S.S.G. 5k2.0, a sentencing court may depart downward if the court finds "that there exists and aggravating or mitigating circumstances of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines". Thus, conditions of confinement could provide a basis for departure if those conditions are unusual enough to take a case out of the heartland of the applicable guidelines. United States v. Smith, 289 F.3d 696,710 (11th Cir 2002), United States v. Carty, 264 F. 3d 191,196 (2nd Cir 2001), United States v. Pressley, 345 F.3d 1205,1218 (11th Cir. 2003).

3. Since his arrest, the Defendant has been incarcerated and housed in the pretrial detention pod located on the third floor of the Leavenworth Prison facility. There is no elevator as required

under the ADA. Defendant is old and in frail health, with serious health ailments, including serious cardiac ailment, hypertension, debilitating rheumatoid arthritis, degenerative vertebrae and venous insufficiency in his right leg which impairs his mobility. Defendant has been required to carry his mattress, bedding & hygiene pack, etc up and down these flights of stair, something he never felt safe doing. Any request for assistance is refused.

4. The conditions at Leavenworth Prison are inhumane. There is visible black mold in the edges of the ceiling and in the showers. There are prolonged 24 hours lockdowns lasting for 60+ days. Defendant recalls going out to outside rec twice during his 14 months of detention mainly due to lockdowns.

5. Even the so-called normal operations should be classified as punishments. In case of any disturbance in the pod, including minor ones, a group of 12-15 prison officials storm the pod in a show of force, spraying large cans of pepper spray everywhere while yelling for compliance by inmates. The Defendant, who has compromised lungs and trouble breathing often finds himself gasping for breath on the ground while being dragged back to his cell by his cellmate.

6. Limited medical help is only available to inmates with pre-existing conditions if inmate is in "distress". The Defendant has watched two fellow inmates die in front of him while begging for medical care. One was given Tums for his chest pain before he expired due to a heart attack.

7. Following the 60+ day lockdown, abruptly and without notice to the inmates, both the hot and cold water were shut off for four consecutive days. This resulted in the toilets filling to the rim with urine and feces. To further dehumanize the defendant and the other inmates, they were given 4 clear plastic trash bags to defecate and drop through the hatch door into a larger trash bag. Defendant suffered physical, mental and psychological trauma as a result of such dehumanizing conditions.

## DEFENDANT'S AGE (5H1.1) AND PHYSICAL CONDITION (5H1.4) WARRANTS A DOWNWARD DEPARTURE

1. United States Sentencing Guidelines manual under section 5H1.1 authorize the court for a downward departure based on defendant's age and infirmity. It is recommended that the court consider alternate means of confinement and/or punishment such as a home detention which might be equally efficient and less costly than incarceration. The 8th Circuit has delineated certain factors as guidance for the district court to consider in permitting a downward departure under U.S.S.G. Section 5H1.4 United States v. Coughlin, 500 F.3d. 813 (8th. Cir. 2007). The following factors shall be considered: 1) Will the imprisonment create more than normal hardships for the defendant? 2) Will the imprisonment worsen defendant's condition or does he need special care not available in prison? 3) Does defendant's physical condition affect his ability to function? United States v. Rabins, 63 F.3d.721,729 (8th Cir. 1995).

2. At 67 years of age the Defendant should have been under geriatric care due to his declining health issues. At the time of his arrest, defendant was already in frail health having suffered saddled pulmonary embolism which put him in Intensive Care Unit (ICU) for couple weeks due to a bout with COVID. This has left him with scarred lungs, right side heart failure and venous insufficiency in his right leg which has drastically exacerbated due to lack of available treatment at Leavenworth BOP. Venous insufficiency cuts off flow of blood to the lower part of the leg and feet. The leg is literally rotting for lack of care and may need amputation if this neglect continues. The rotting condition of his leg is so obvious that it needs no doctor certification of its progressive degeneration. The pain is so severe that mobility has become unstable resulting in defendant's fear of falling. The Defendant had a surgery lined up before his incarceration that the he was not taken to, with Dr. Thomas Baldwin.

9

Case 4:23-cr-00067-BP   Document 56   Filed 06/13/24   Page 9 of 11

3. Defendant suffers from aortic aneurism, compromised lungs, degenerative spine, acute rheumatoid arthritis, hypertension, diabetes, high cholesterol, and damaged rotator cuff in his left arm. All of these conditions existed when defendant was brought to Leavenworth BOP and require additional care that is not being provided at Leavenworth BOP making his situation unique and meriting a sentence of probation or a term of supervised release with a condition of home confinement.

**EXCEPTIONAL ACCEPTANE OF RESPONSIBILITY - 5K2.0**

The Defendant prays that the Court grant a 2-level downward departure due to the Defendant's extraordinary acceptance of responsibility in that he has voluntarily surrendered his interest in the Georgia property, which should more than satisfy his restitution obligation.

**ABERRRATION IN CONDUCT – 5K2.2**

For all of the previously stated reasons above, the defense also prays that the Court consider a downward departure in accordance with U.S.S.G 5K2.2 and US v. Patterson, 281 F.Supp2d 626 (2nd Cir. 2003), based on his mental and emotional conditions, employment record, record of prior good work and motivation for committing the offenses.

**WHEREFORE**, the defense requests the Court to grant this motion and impose a downward variance to probation. Alternatively, the defense requests the Court grant a two-level downward departure for a total prison sentence of 18 months of incarceration.

Respectfully submitted,

/s/_____
David McDonald, KS#24434, MO#74073
100 East Park Street – Suite 8
Olathe, KS 66061
Ph: (913) 210-0844
dave@riveralawoffice.com
Attorney for the Defendant

## CERTIFICATE OF SERVICE

I, David McDonald, hereby certify that a copy of the above and foregoing **Memo/Motion** was served on the prosecution, by electronic the date of filing.

___/s/_____
David McDonald